UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| JOHN POST, Individually and On Behalf of All Others Similarly Situated, | ) ) ) |
| Plaintiff, | ) Case No. _____ ) |
| v. | ) JURY TRIAL DEMANDED ) |
| NATIONAL GENERAL HOLDINGS CORP., BARRY KARFUNKEL, ROBERT KARFUNKEL, BARRY ZYSKIND, DONALD DECARLO, PATRICK FALLON, BARBARA PARIS, JOHN MARSHALECK, and JOHN D. NICHOLS, JR., | ) CLASS ACTION ) ) ) ) ) ) ) |
| Defendants. | ) |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This action stems from a proposed transaction announced on July 7, 2020 (the "Proposed Transaction"), pursuant to which National General Holdings Corp. ("National General" or the "Company") will be acquired The Allstate Corporation ("Parent") and Bluebird Acquisition Corp. ("Merger Sub," and together with Parent, "Allstate").

2. On July 7, 2020, National General's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Allstate. Pursuant to the terms of the Merger Agreement, National General's stockholders will receive $32.00 in cash plus a special dividend equal to $2.50 in cash for each share of National General common stock they own.

3. On August 6, 2020, defendants filed a proxy statement (the "Proxy Statement") with the United States Securities and Exchange Commission (the "SEC") in connection with the Proposed Transaction.

4. The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of National General common stock.

9. Defendant National General is a Delaware corporation and maintains its principal executive offices at 59 Maiden Lane, 38th Floor, New York, New York 10038. National General's common stock is traded on the NASDAQ Global Market under the ticker symbol "NGHC."

10. Defendant Barry Karfunkel is Chief Executive Officer and Co-Chairman of the Board of the Company.

11. Defendant Robert Karfunkel is President and Co-Chairman of the Board of the Company.

12. Defendant Barry Zyskind is a director of the Company.

13. Defendant Donald DeCarlo is a director of the Company.

14. Defendant Patrick Fallon is a director of the Company.

15. Defendant Barbara Paris is a director of the Company.

16. Defendant John Marshaleck is a director of the Company.

17. Defendant John D. Nichols, Jr. is a director of the Company.

18. The defendants identified in paragraphs 10 through 17 are collectively referred to herein as the "Individual Defendants."

## CLASS ACTION ALLEGATIONS

19. Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of National General (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

20. This action is properly maintainable as a class action.

21. The Class is so numerous that joinder of all members is impracticable. As of July 6, 2020, there were approximately 113,860,628 shares of National General common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

22. Questions of law and fact are common to the Class, including, among others, whether defendants will irreparably harm plaintiff and the other members of the Class if

3

defendants' conduct complained of herein continues.

23. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

24. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

25. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

*Background of the Company and the Proposed Transaction*

26. National General is a specialty personal lines insurance holding company serving a wide range of customer segments through a network of approximately 42,300 independent agents for property-casualty products.

27. The Company provides personal and commercial automobile, homeowners, umbrella, recreational vehicle, motorcycle, lender-placed, supplemental health, and other niche insurance products.

28. On July 7, 2020, National General's Board caused the Company to enter into the Merger Agreement.

29. Pursuant to the terms of the Merger Agreement, National General's stockholders will receive $32.00 in cash plus a special dividend equal to $2.50 in cash for each share of National General common stock they own.

30. According to the press release announcing the Proposed Transaction:

> The Allstate Corporation (NYSE: ALL) has agreed to acquire National General Holdings Corporation for approximately $4 billion in cash, or $34.50 per share. The transaction is expected to close in early 2021, subject to regulatory approvals and other customary closing conditions. . . .
>
> Transaction Details
>
> National General shareholders will receive $32.00 per share in cash from Allstate, plus closing dividends expected to be $2.50 per share, providing $34.50 in total value per share. Allstate will fund the share purchase by deploying $2.2 billion in combined cash resources and, subject to market conditions, issuing $1.5 billion of new senior debt. Allstate expects to maintain its current share repurchase program.
>
> National General's board of directors has approved the transaction, which includes customary terms and conditions, including a breakup fee of $132.5 million. A voting agreement has also been signed with entities controlling 40% of National General's common shares to vote for the transaction. . . .
>
> Ardea Partners LP was the exclusive financial adviser to Allstate, and Willkie Farr & Gallagher LLP was the company's legal adviser. J.P. Morgan Securities LLC was the exclusive financial adviser to National General, and Paul, Weiss, Rifkind, Wharton & Garrison LLP was National General's legal counsel.

***The Proxy Statement Omits Material Information, Rendering It False and Misleading***

31. Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction.

32. As set forth below, the Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.

33. First, the Proxy Statement omits material information regarding the analyses performed by the Company's financial advisor in connection with the Proposed Transaction, J.P Morgan Securities LLC ("JPM").

34. With respect to JPM's Dividend Discount Analysis, the Proxy Statement fails to disclose: (i) the estimated future dividend stream for the Company as used by JPM in the analysis; (ii) the estimated terminal values used in the analysis; (iii) the individual inputs and assumptions underlying the cost of equity range of 10.75% to 11.75% and the terminal growth rate of 1.50% to 2.50%; and (iv) the fully diluted shares outstanding provided by the Company's management.

35. With respect to JPM's Analysts Price Targets analysis, the Proxy Statement fails to disclose: (i) the individual price targets used by JPM in the analysis; and (ii) the sources thereof.

36. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

37. Second, the Proxy Statement omits material information regarding JPM's engagement.

38. The Proxy Statement provides that "J.P. Morgan and its affiliates . . . are currently providing services to Allstate unrelated to the Merger, for which J.P. Morgan and such affiliates have received, or will receive, customary compensation." However, the Proxy Statement fails to disclose the nature of these current services, as well as the amount of compensation JPM will receive for providing such services.

39. Additionally, the Proxy Statement provides that "J.P. Morgan's commercial banking affiliate is an agent bank and a lender under outstanding credit facilities of the Company and Allstate, for which it receives customary compensation or other financial benefits." However,

the Proxy Statement fails to disclose the amount of compensation JPM is receiving or will receive for acting in such capacities.

40. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

41. The omission of the above-referenced material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) Background of the Merger; (ii) Recommendation of the Board and Reasons for the Merger; and (iii) Opinion of J.P. Morgan Securities LLC.

42. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and National General**

43. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

44. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. National General is liable as the issuer of these statements.

45. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

46. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

47. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction.  In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

48. The Proxy Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

49. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

50. Because of the false and misleading statements in the Proxy Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants

51. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

52. The Individual Defendants acted as controlling persons of National General within the meaning of Section 20(a) of the 1934 Act as alleged herein.  By virtue of their positions as officers and/or directors of National General and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

8

53. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

54. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

55. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

56. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

**PRAYER FOR RELIEF**

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.        In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.        Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.        Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E.        Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F.        Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: August 13, 2020

**RIGRODSKY & LONG, P.A.**

By: */s/ Gina M. Serra*
Seth D. Rigrodsky (#3147)
Brian D. Long (#4347)
Gina M. Serra (#5387)
300 Delaware Avenue, Suite 210
Wilmington, DE 19801
Telephone: (302) 295-5310
Facsimile: (302) 654-7530
Email: sdr@rl-legal.com
Email: bdl@rl-legal.com
Email: gms@rl-legal.com

*Attorneys for Plaintiff*

**OF COUNSEL:**

**RM LAW, P.C.**
Richard A. Maniskas
1055 Westlakes Drive, Suite 300
Berwyn, PA 19312
Telephone: (484) 324-6800
Facsimile: (484) 631-1305
Email: rm@maniskas.com